# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| **BRIDGETT JENNINGS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.**  3:18-cv-250-TBR |
| **LIFE INSURANCE COMPANY of NORTH AMERICA,** | |
| **Defendant.** | |

## COMPLAINT

### Introduction

1.       This complaint seeks legal and equitable damages arising from and relating to disability benefits provided by an insurance policy underwritten and issued by Defendant.

2.       The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein.  To avoid the unnecessary repetition in each section, Plaintiff hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3.       The factual allegations found in this complaint are not exhaustive, and are presented throughout this complaint so as to provide the requisite notice of the basis for Plaintiff's allegations.

### Jurisdiction & Venue

4.       This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

5.       Venue is appropriate in the United States District Court for the Western District

of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

## Parties

6.      Plaintiff Bridgett Jennings ("Ms. Jennings") is a citizen of the United States and an insured participant under the disability insurance coverage at issue in this lawsuit.

7.      Defendant Life Insurance Company of North America ("LINA") is the underwriter and insurer for the disability insurance policies at issue in this lawsuit.  At all relevant times, LINA was doing business within the Commonwealth of Kentucky and may be found in this district.

## Facts

8.      Ms. Jennings is insured under a group long term disability insurance policy ("LTD Policy") underwritten and issued by LINA.

9.      In the event Ms. Jennings is functionally unable to perform the necessary and material work duties, the LTD Policy provides a monthly disability benefit equal to 60% of her pre-disability earnings

10.     For the first 24 months of disability, the LTD Policy provides monthly disability benefits if the insured – Ms. Jennings – is unable to perform the material duties of her regular occupation – "own occupation".

11.     After 24 months, the LTD Policy provides monthly disability benefits if the insured – again, Ms. Jennings – is unable to perform the material duties of "any occupation" for which she is qualified and unable to earn at least 60% of her indexed pre-disability earnings.

12.     In February 2014, Ms. Jennings was forced to cease working in her occupation due to her physical restrictions and limitations and her corresponding treatment regimen, which prevented her from engaging in full-time gainful employment.  Subsequent to ceasing work, Ms. Jennings has remained continuously disabled and unable to function on a full-time basis in any gainful sedentary, or greater, employment.

13.     In June 2014, with the support of her treating and examining physicians, Ms. Jennings submitted a claim to LINA for monthly disability benefits.

2

14.     Despite the support of her treating physicians, LINA denied Ms. Jennings' claim. LINA's denial was not based on Ms. Jennings' medical evidence, but rather was instead focused on the financial liability it would incur if her claim was approved – potential liability of over $1.4 million.

15.     In October 2014, LINA reversed its position and approved Ms. Jennings' LTD Policy claim effective August 13, 2014 – 180 days after her February 14, 2014 date of disability.

16.     Based on her disability date – February 14, 2014 – Ms. Jennings' "own occupation" period began on August 13, 2014 and continued through August 12, 2016.  Ms. Jennings' "any occupation" period commenced on August 13, 2016 and continues for the duration of her disability.

17.     In January 2015, despite any improvement in her functional limitations, LINA again terminated Ms. Jennings' "own occ" monthly disability benefits.   LINA's arbitrary termination of Ms. Jennings' benefits was again based on its financial interests, as opposed to Ms. Jennings' supporting medical evidence – seeking to avoid an ongoing $4,042 monthly liability.

18.     Ms. Jennings timely appealed LINA's decision.  In April 2015, LINA again reversed its position based on Ms. Jennings continued supporting medical evidence and lack of improvement in her functional limitations.

19.     In December 2015, evidencing its continued focus on its financial interests as opposed to Ms. Jennings, LINA denied Ms. Jennings' "any occ" monthly disability benefits – _nine (9) months in advance_.  LINA's decision was based on nothing more than speculation, indicative that LINA was solely focused on its financial interests.

20.      Ms. Jennings twice appealed LINA's decision to terminate her monthly disability benefits, but LINA denied both appeals.

21.     Ms. Jennings exhausted her administrative remedies under the LTD Policy.

22.     The LTD Policy does not contain discretionary language.  In *Barbu v. Life Insurance Company of N. America*, Civil Action No. 12-cv-1629, LINA admitted the LTD

3

Policy does not contain discretionary language.  LINA stated it "admits that the Policy contains no explicit grant of discretionary authority."  LINA further stated, "LINA does not dispute that the Policy does not contain a grant of discretionary authority."

23.     At all times relative hereto, LINA was operating under an inherent and structural conflict of interest because any disability benefits provided to Ms. Jennings are paid from LINA's assets.

24.     LINA's corporate culture pressures claims personnel to deny claims in order to reduce the amount of monthly benefits paid.  Employees who save LINA money by terminating or denying claims are more likely to be rewarded with bonuses, promotions, and favorable employment reviews as compared with those who do not.  By way of example, LINA employees are subject to production metrics that are based on claim closure (return to work).

25.     LINA's claims process is inherently flawed and biased, resulting in participants – Ms. Jennings – being denied a full-and-fair review.  By way of example, and not an exhaustive list:

    a.     LINA denies disability claims based on its statistical data that participants will *not* file an appeal, thereby avoiding any future liability;

    b.     Because LINA knows participants statistically will *not* appeal, LINA limits the resources it expends as part of its claim review and denial decision (e.g. not obtaining any medical or functional capacity examination, and not obtaining any surveillance);

    c.     Based on its knowledge that an appeal is *not* likely, LINA's denial letters are intentionally sparse and fail to comply with both the policy terms and the Department of Labor ("DOL") claim regulations (e.g. not providing an explanation for the denial (no discussion), not identifying the specific information required);

    d.     LINA fails to comply with the LTD Policy terms limiting it to an actual examination of the insured when it questions or disputes the participant's medical evidence; and

    e.     LINA does not ensure its disability claims personnel comply with the DOL claim regulations.

26.     Ms. Jennings' complaint is timely and not otherwise time barred.

## Claims

27.     The long-term disability insurance policy is a written contract.

28.     LINA breached the terms of the contract. By way of example, and not an exhaustive list: LINA failed to provide the respective LTD Policy benefits; ignored relevant medical evidence; failed to provide a full-and-fair review; and failed to comply with the policy terms.

29.     LINA's contractual breaches have resulted in damage to Ms. Jennings, not only in the loss of her monthly disability benefits, but also in her loss of earnings on the unpaid benefits, her lost opportunity costs, and her attorneys' fees and costs – all incurred as a direct result of LINA's improper actions.

30.     LINA has similarly failed to comply with the DOL claim regulations, as well as statutory requirements, that it provide a full-and-fair claims process.

31.     29 U.S.C. §§1132(a) is the enforcement mechanism permitting Ms. Jennings to enforce the contractual terms of the LTD Policy, to obtain past benefits and reinstatement of ongoing benefits, to obtain declaratory relief, and to obtain other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

## Attorneys' Fees & Costs

32.     As a result of LINA's improper conduct, Ms. Jennings has incurred attorneys' fees and costs.

33.     29 U.S.C. §1132(g) is the enforcement mechanism permitting Ms. Jennings to recover her attorneys' fees and costs.

## Prayer for Relief

34.     Ms. Jennings requests the Court enter judgment in her favor and against LINA on all claims asserted herein.

35.     Ms. Jennings requests the Court award her reasonable attorneys' fees and costs.

36.     Ms. Jennings requests the Court award pre- and post-judgment interest at the greater of her actual borrowing rate or the rate earned by LINA on her unpaid monthly disability benefits.

37.     Ms. Jennings requests the Court award all other legal or equitable relief to which she may be entitled.

38.     Ms. Jennings requests leave to amend the complaint as needed.

* * * * * * * *

Dated:  April 19, 2018                    Respectfully submitted,

s/ Andrew M. Grabhorn
Michael D. Grabhorn
*m.grabhorn@grabhornlaw.com*
Andrew M. Grabhorn
*a.grabhorn@grabhornlaw.com*
Grabhorn Law | Insured Rights™
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff Bridgett Jennings*